[Crim. No. 9967. Second Dist., Div. One. May 4, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. CECIL MASSIE, Defendant and Appellant.

Eugene V. McPherson, under appointment by the District Court of Appeal, for Defendant and Appellant.

814

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Gilbert F. Nelson, Deputy Attorney General, for Plaintiff and Respondent.

WOOD, P. J.—In an amended information the defendant was accused of burglary in that he willfully entered a vehicle, to wit, a semitrailer used in conjunction with a motor vehicle, to wit, a motor truck and semitrailer combination, the property of John M. Collier, the doors of said vehicle being locked, and with the intent then and there to commit theft.

In a jury trial, defendant was found guilty of burglary in the first degree. Probation was denied, and he was sentenced to imprisonment in the state prison. He appeals from the judgment.

The judgment was affirmed by this court. (*People* v. *Massie* (Cal.App.) 44 Cal.Rptr. 297.) The *Dorado*-case rule was not raised by appellant prior to the time that opinion was filed. The Supreme Court granted a hearing and retransferred the case to the court for further consideration in the light of *People* v. *Stewart,* 62 Cal.2d 571 [43 Cal.Rptr. 201, 400 P.2d 97] ; *People* v. *North,* 233 Cal.App.2d 884 [44 Cal.Rptr. 123] ; and *People* v. *Andrews,* 234 Cal.App.2d 69 [44 Cal.Rptr. 94]. (These cases pertain to the *Dorado*-case rule.)

Appellant contends (as shown by his briefs on the original hearing) that the court did not instruct the jury properly; that the court erred in allowing the information to be amended; that the amended information does not allege an offense ; and that the evidence was not sufficient to support the judgment. He contends further (as shown by his petitions for rehearing and for hearing) that the rule in the *Dorado* case was applicable herein,—that the officers' conversations with the defendant were not admissible in evidence, because the defendant had not been advised of his right to counsel or of his right to remain silent.

On December 3, 1963, about 10 p.m., Mr. Collier, a truck driver in the employ of the Thrifty Drug Company, drove a truck-tractor, to which were attached two 22-foot semitrailers, containing drug store merchandise, to a place at the rear of a Thrifty Drug Store in Compton and parked the vehicle there. He had driven the vehicle from the Thrifty Drug Company's warehouse in Los Angeles to that store for the purpose of delivering some of the merchandise there.

The first trailer (the one next to the tractor) had a double-door at the rear end and a single door on each side. Each of

the doors on this trailer was sealed by a metal clip, which is a piece or strip of pliable metal about six inches long, and one-fourth inch wide, which "goes around the hasp over the handle of the door"—and one end of the strip is placed through a clip at the other end of the strip, and then the clip locks itself. When the doors are sealed with a clip, it is necessary to use force to break the metal seal in order to open the doors.

The second or rear trailer had a rear door and a side door, which doors were locked with devices or padlocks which could be opened only by using a key.

When the driver left the warehouse the doors of the trailers were sealed or locked and he did not stop the vehicle, except for traffic requirements, until he arrived at the Compton store. After parking the vehicle there, he went into the store to ask the manager to unlock the trailers so that he could make the deliveries. When he left the vehicle to enter the store, the doors of the trailers were sealed or locked in the manner above described, but the doors of the tractor were not locked. The assistant manager Mr. Banks, after obtaining the key to the trailer, proceeded with Mr. Collier and another employee, Mr. Collado, to the trailers. As they approached the trailers, they saw the defendant Massie standing inside the first trailer and they saw another man, who was outside that trailer, holding the side door of the trailer open. The metal seal on that door had been broken. Then the man who was holding the door ran away. The defendant jumped out of the trailer and started walking away. The employees asked him to stop, but he kept walking and then he ran across the street. During this time the employees were following him. When they were within a few feet of him, he pulled out a knife and began swinging it. Mr. Collado went to the store and returned in his automobile to the other employees, who entered the automobile, and then they followed defendant to a street corner, where they again approached him. At that time Mr. Collado had a tire iron in his hand and the two other employees had similar weapons. They compelled the defendant to put the knife on the ground, and to drop a pair of leather gloves which he was wearing and which had been in the tractor cab when Mr. Collier went into the store. Then two police officers, who were on patrol duty, arrived there in a police car and arrested defendant.

Officer Parker testified that about five minutes after the arrest, while he and the defendant were in the back seat of the police car, he asked the defendant to relate what had occurred

just prior to the arrest; and that defendant's statements at that time were made freely and voluntarily. When the deputy district attorney asked him to relate that conversation, defendant's counsel objected thereto upon the ground that the corpus delicti had not been proved. His argument upon the objection was to the effect that the vehicle was not a locked vehicle (as required by section 459 of the Penal Code in order to constitute burglary), and therefore a burglary was not committed—that is, that since the tractor doors were not locked the vehicle was not a locked vehicle, even though the two trailers attached to the tractor were locked. The objection was overruled. Then Officer Parker related the conversation, as follows: Defendant said that he and Henry Eberhardt had been in the drug store where Eberhardt shoplifted a quart of whiskey, and then they went outside near the truck; Eberhardt found leather gloves in the cab of the truck; they agreed to break into the truck and that Eberhardt would get inside, pitch things out to defendant, and then they would leave; both of them entered the truck, after Eberhardt broke the seal; soon thereafter the employees came and chased them from the truck.

Officer Morrison testified that on December 5 (two days after the arrest) he had a conversation with the defendant at the police station; and that defendant's statements at that time were made freely and voluntarily. He (officer) asked the defendant to relate the circumstances which brought about his arrest. Defendant replied that he and Henry Eberhardt were in the drug store and Henry took a bottle of whiskey and they left the store; Henry took some gloves from the cab of the parked truck (tractor) and handed them to defendant, who put them on his (defendant's) hands; and Henry broke the seal on the trailer door and got into the trailer. Defendant replied, "No"; and stated further that when some employees came from the store, Henry ran from the scene, and defendant walked away and then "ran." The officer asked him whether he pulled a knife on the employees, and had swung it at them in a threatening manner. He replied in the affirmative.

Defendant testified that Eberhardt took the gloves from the cab of the truck and handed them to defendant, who returned them to Eberhardt; defendant did not know whether Eberhardt broke the seal on the truck, but Eberhardt went into the truck; defendant did not go inside the truck; when the employees came there, Eberhardt jumped out of the truck and ran away, but defendant walked down the street; the employ-

ees asked whether he was burglarizing the truck; he said he did not know anything about the truck or burglarizing; the employees wanted to hold him, but he said, "No, you are not going to hold me."; he ran across the street because some cars were coming; when the employees were first following him, they did not have any weapons, but later they had "hook blade knives"; one of the employees flashed a light on him and asked whether he had a knife; then defendant threw a knife in the grass; at this time, the officers came and put him in the police car; he did not have a conversation with Officer Parker in the car; he did not tell Officer Morrison that he was inside the truck. On cross-examination, he said that when he was arrested he had the gloves in his hand; that he knew that Eberhardt was inside the truck to do some stealing; that he did talk to Officer Parker while they were in the car, but defendant did not say that he and Eberhardt agreed to break into the truck.

Appellant contends that the court erred in giving the following two instructions: (1) ". . . that the word 'lock' means to make fast by the interlinking or interlacing of parts." (2) "If you find as a matter of fact that all the doors of the semi-trailer were secured with metal seals such as Exhibit No. 1 in evidence prior to the entry, and that application of some force was required to break the seal to permit entry to the interior of the vehicle through the door, then such vehicle was locked within the meaning of the law." Appellant argues that these are instructions on questions of fact, and that they instruct the jury that a seal is a lock. Section 459 of the Penal Code provides, in part: "Every person who enters any house . . . or other building . . . trailer coach as defined by the Vehicle Code, *vehicle as defined by said code when the doors of such vehicle are locked*, . . . with intent to commit . . . larceny or any felony is guilty of burglary." (Italics added.) In the present case, the evidence was uncontradicted that, when the driver entered the store, each door of the first trailer was sealed with a pliable metal strip "around the hasp over the handle of the door," with one end of the strip through a self-locking clip at the other end of the strip. The definition of the word "lock," as stated in the given instruction, was a correct definition of that word. The other instruction, above quoted, was to the effect that if the jury found as a matter of fact that all the doors of the semitrailer (first trailer) were secured with metal seals, as described in the evidence, the vehicle was locked within the meaning of said

code section. The matter of construing the section was a question of law for the court. It does not appear that the court instructed the jury as to what the facts were with respect to questions of fact. It appears that the court was instructing the jury that if it found certain facts, then and in that event the court was declaring as a matter of law that the trailer was a locked vehicle within the meaning of said code section. Under the evidence, it was proper to instruct the jury that the trailer was locked.

Appellant argues further, however, to the effect that even if such sealing of the trailer amounted to a locking of the trailer, the "vehicle," which he asserts consisted of the truck-tractor and the trailers, was not a "locked vehicle," since the doors of the truck-tractor were not locked. In *People* v. *Toomes,* 148 Cal.App.2d 465 [306 P.2d 953], wherein the doors and the trunk of an automobile were locked and the defendant broke the trunk open and stole a tire therefrom, it was held that the act of entering the locked trunk for the purpose of theft was burglary. In that case the burglarized part (trunk) of the automobile was a separate enclosed part which could not be entered from the passenger part of the vehicle. ■ In the present case the trailer was a separate enclosed part of the tractor-trailer combination and it could not be entered from the passenger or cab part of the tractor. As above indicated, section 459 of the Penal Code, in specifying various things or places which may be the subjects of burglary, states in part: a *"vehicle* as defined by said code [Vehicle Code] when the doors of such vehicle are locked." (Italics added.) Section 550 of the Vehicle Code defines "semitrailer" as ". . . a *vehicle* designed for carrying persons or property, used in conjunction with a motor vehicle, and so constructed that some part of its weight and that of its load rests upon, or is carried by, *another vehicle."* (Italics added.) The court, in giving the said instruction, properly referred to the semitrailer as "a vehicle." The court did not err in giving said instruction, above quoted, to the effect that if the jury found certain facts, then and in that event the trailer was a "locked vehicle."

■ Appellant contends further that the court should have given an additional instruction, namely, Instruction 115-B of California Jury Instructions, Criminal, concerning conviction of a lesser degree of the crime of burglary. Appellant did not request the trial court to give the instruction. Under the circumstances, the court was not required to give such an instruction. (See *People* v. *Walker,* 155 Cal.App.2d 273, 275

[318 P.2d 77].) The court gave an instruction to the effect that if the jury found the defendant guilty of the crime of burglary it should determine the degree of the crime; that evidence had been admitted from which the jury could conclude that the defendant was armed with a deadly weapon and that in the commission of the crime he assaulted a person; and that the degree may be found to be of the first degree if the proof shows beyond a reasonable doubt that the defendant committed one or both of such acts.

■ Appellant also contends that the court erred in allowing the information to be amended. The original information alleged, in part, that defendant committed burglary in that he ''did willfully enter *a motor vehicle,* to wit, *a semi-truck and trailer combination* . . . the doors of said motor vehicle being locked . . . with the intent . . . to commit theft.'' During the trial (while the sixth witness for the prosecution was testifying), upon motion of the prosecution and over the objection of the defendant, the information was amended by interlineation to read that defendant ''did willfully enter *a vehicle,* to wit, *a semi-trailer used in conjunction with a motor vehicle,* to wit, *a motor truck and semi-trailer combination* . . . the doors of said vehicle being locked . . . with the intent . . . to commit theft.'' Appellant argues that the amendment constituted a substantial change in the information and required a plea to the amended information and necessitated a continuance. Defendant did not request a continuance, and, at the time of trial, apparently did not consider that he had been prejudiced. It does not appear that the rights of defendant were prejudiced by the amendment.

■ ''Whether the prosecution should be permitted to amend an information is a matter within the sound discretion of the trial court and its discretion will not be overruled in the absence of a clear abuse thereof.'' (*People* v. *Baldwin,* 191 Cal.App.2d 83, 87 [12 Cal.Rptr. 365]—reaffirmed on rehearing in 228 Cal. App.2d 840 [39 Cal.Rptr. 335].) ■ It was not necessary for defendant to enter another plea. He had pleaded not guilty to the information and he retained the benefit of that plea to the amended information. The court did not abuse its discretion in allowing the amendment.

■ Appellant contends further that the amended information does not allege an offense. As hereinabove indicated, section 459 of the Penal Code proscribes the entry of a ''vehicle as defined by said code [Vehicle Code] when the doors of such vehicle are locked.'' Also, as above shown, section 550 of

the Vehicle Code refers to a semitrailer as a "vehicle." The amended information alleges the crime of burglary.

Appellant asserts further that the evidence was insufficient to support the judgment. ▇▇ The substance of the evidence has been set forth hereinabove. It is clear that the evidence amply supports the judgment.

The additional contention presented on this rehearing is that the defendant's conversations with the officer should not have been received in evidence, because the *Dorado*-case rule was applicable and the defendant had not been advised of his right to counsel or his right to remain silent. In *People* v. *Dorado*, 62 Cal.2d 338, 353-354 [42 Cal.Rptr. 169, 398 P.2d 361], it is said: "[D]efendant's confession could not properly be introduced into evidence because (1) the investigation was no longer a general inquiry into an unsolved crime but had begun to focus on a particular suspect, (2) the suspect was in custody, (3) the authorities had carried out a process of interrogations that lent itself to eliciting incriminating statements, (4) the authorities had not effectively informed defendant of his right to counsel or of his absolute right to remain silent, and no evidence establishes that he had waived these rights." The *Stewart* case (62 Cal.2d 571 [43 Cal.Rptr. 201, 400 P.2d 97]), referred to in the order retransferring the present case to this court, applied the *Dorado*-case rule, in reversing convictions of robbery and murder, under circumstances where the defendant therein had admitted that he robbed and "he could have kicked" the victim on the head after she fell. In that case the defendant "had been in custody for five days and had been interrogated daily," and it was held that all the conditions of the *Dorado*-case rule (requiring reversal) had been fulfilled,—that the investigation had begun to focus on Stewart, that the officers had carried out a process of interrogations that lent itself to eliciting incriminating statements, and that defendant had not been informed of his right to counsel or his right to remain silent.

The *North* case and the *Andrews* case, *supra*, also referred to in the retransfer order, applied the *Dorado* rule under factual situations which were held to be sufficient to show, in each case, that incriminatory statements of the defendant were made after the investigation had focused on him, that interrogations by the officers elicited the incriminating statements, and that the defendant had not been informed of his constitutional rights regarding counsel and remaining silent.

▇▇ In the present case, Officer Parker, who testified

regarding a conversation with defendant, was one of the officers who, while on patrol duty in a police car, arrived at the street corner where the drug store employees, using tire irons as weapons, were attempting to apprehend the defendant who was swinging a knife in a threatening manner at the employees. About five minutes after defendant was arrested, and while he and Officer Parker were in the police car, the officer asked him to relate what had occurred just prior to the arrest. The defendant said, in substance, that after Eberhardt had shoplifted some whiskey they (defendant and Eberhardt) went outside the drug store, and Eberhardt found gloves in the cab of the truck; that they agreed to break into the truck, and that Eberhardt would get into the truck and pitch things out to the defendant; both of them entered the truck, after Eberhardt broke the seal; and the employees came and chased them from the truck. No other question was asked by this officer. It thus appears that the officer did not carry on a process of interrogations that lent itself to eliciting incriminating statements, but on the contrary, by asking the one general question within a few minutes after the arrest, he afforded the defendant an immediate opportunity to explain the circumstances of his involvement or difficulty with the employees. In *People* v. *Stewart, supra* (62 Cal.2d 571, 578-579 [43 Cal.Rptr. 201, 400 P.2d 97]), in referring to *United States* v. *Konigsberg* (3d Cir. 1964) 336 F.2d 844, it is said: "Federal Bureau of Investigation agents apprehended the defendants in a garage containing stolen goods, arrested them and took them to the bureau's office. At that office, prior to the arraignment, the agents asked Konigsberg ' "why he was in this garage and just what had taken place . . . and . . . if he wished to cleanse himself or explain . . . what his reasons for being there were, why the other individuals were there." ' [Page citation.] Konigsberg then made some incriminating statements. Among other reasons for not applying *Escobedo,* the court said that the purpose of the interrogation, even though it took place after the arrest, was not to elicit a confession. The court stated, 'The uncontradicted purpose of the discussion was to give Konigsberg a chance to explain his presence in the garage if he could; to hear Konigsberg's side of the story. . . . If Konigsberg or any of the other people caught in the garage could account for their presence this was their opportunity.' " In the present case, the court did not err in receiving in evidence the conversation which Officer Parker had with the defendant.

 Officer Morrison, who testified regarding a conversation he had with the defendant at the police station two days after the arrest, was not an arresting officer but was a member of the detective division. This officer asked the defendant to relate the circumstances which brought about his arrest. Defendant's reply, as shown hereinabove in stating the officer's testimony, included a statement that Eberhardt broke the seal on the trailer door and got into the trailer. The officer then asked defendant whether he entered the trailer. Defendant replied, "No"; and stated further that when some employees came, Eberhardt ran away, and the defendant walked away and then "ran." The officer asked whether the defendant pulled a knife on the employees and swung it at them in a threatening manner. He replied in the affirmative. The first of the three questions asked by the officer was a general one which afforded the defendant an opportunity to explain the circumstances of the arrest. After the defendant had said, in reply to the first question, that Eberhardt had broken the seal and entered the trailer, the officer asked a second question as to whether the defendant had entered the trailer. His reply, "No," was of course exculpatory, but the remainder of his reply (to the effect that when the employees came he walked away and then began to run) might be construed as indicating consciousness of guilt. After the defendant had said, in effect, that he had run away from the employees, the officer asked him the third question as to whether he pulled a knife on them. This reply might also indicate culpability. It appears that the three questions were similar to the questions referred to hereinabove in the quotation from the *Konigsberg* case,—wherein Konigsberg was asked why he was in the garage, what had taken place, whether he wished to explain, and why the other individuals were there. In that case, where the defendant made some incriminating statements, it was said, as above indicated, that the purpose of the interrogation was to give the defendant an opportunity to explain the circumstances or to give his side of the story. In the present case, it appears that the three questions did not constitute a process of interrogations that lent itself to eliciting incriminating statements, but on the contrary the officer, by asking the general question, and by asking the two other questions based on the replies, afforded the defendant an opportunity to explain the circumstances of his in-

volvement in the truck incident. The trial court did not err in receiving in evidence the conversation which Officer Morrison had with the defendant.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 20, 1966. Peters, J., was of the opinion that the petition should be granted.