[Crim. No. 7767. Third Dist. Apr. 15, 1975.]

THE PEOPLE, Plaintiff and Appellant, v.
CLAUDE WILLIAM MALCOLM, Defendant and Respondent.

**COUNSEL**

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Joel Carey and Eddie T. Keller, Deputy Attorneys General, for Plaintiff and Appellant.

David P. Weaver, Jr., and Jerry W. Akins for Defendant and Respondent.

## OPINION

REGAN, J.—By an information filed on October 10, 1973, the defendant Malcolm was accused of violating Penal Code section 459, burglary of a locked automobile. Upon a Penal Code section 995 defense motion, the trial court granted a dismissal of the charge on the basis the car was not locked at the time of the alleged offense. (See Pen. Code, § 1385.) The People appeal from the dismissal.

On June 30, 1973, at approximately 9:30 a.m., Arthur Armstrong drove with some friends to a spot on the Cache Creek in Yolo County, parked his car near the creek and locked all the doors of his Volkswagon with a key. All the car windows were rolled up and closed. However, the left front wing lock was broken preventing it from being locked. The group then left.

Because of a recent rash of car burglaries at this parking area, Yolo County Deputy Sheriff Beal and a fellow officer had this location staked out on June 30, and were positioned about 80 feet from the parking area.

At approximately 1:30 p.m., Beal observed a blue Scout automobile drive into the parking area and then depart. Twenty minutes later this same car returned to the scene. Three men, recognized by Beal as the defendant Malcolm, and two others, Stiles and Gillette, got out of the Scout. The three men talked awhile and drank some wine until all the other people in the area had departed.

At this point Gillette took a seat in the Scout and faced toward the entrance to the parking area. The defendant Malcolm walked to the edge of a trail leading toward the water and then returned to the Scout. Stiles then began systematically going up and down the rows of cars parked there. He touched the door handles and looked into the cars at the same time.

When Stiles came to Armstrong's Volkswagon, he first tried both doors. On the driver's side of the car Officer Beal observed Stiles open the wind wing, reach his arm inside and open the door. Stiles then entered the car, checked out various items of property, and exited the car with an armload of property. The defendant Malcolm approached the car and also carried some objects from it to the Scout. At this point the officers approached the three men and placed them under arrest.

Officer Beal examined the wing window after the arrest. He testified that there were signs of forced entry. The wind wing was broken, the latch on the wind wing was broken, and there were smudge marks on the window indicating where pressure had been applied to the wind wing.

Section 459 of the Penal Code provides, in pertinent part, as follows: "Every person who enters any . . . vehicle as defined by said [Vehicle] code when the doors of such vehicle are locked, . . . with intent to commit grand or petit larceny or any felony is guilty of burglary."

The Attorney General contends that auto burglary is established by proof of an unauthorized entry into an automobile through locked doors and closed windows with intent to steal and therefore the trial court erred in dismissing the charge.

The Attorney General argues the available legal authorities support the spirit, if not the letter, of his position. He initially relies upon *People v. Toomes* (1957) 148 Cal.App.2d 465 [306 P.2d 953].

In *Toomes* the evidence disclosed that the owner of a car parked his car, closed the windows and locked the doors. The trunk was locked. Subsequently, the defendants opened the trunk with a tire iron and screw driver and took a spare tire. On a People's appeal from the granting of a Penal Code section 995 motion, the defendants contended that a locked trunk was not a locked door within the meaning of Penal Code section 459. In reversing the trial court's order, the Court of Appeal looked to legislative intent, stating (at p. 466): "In deciding whether it was the intent of the Legislature in using the word 'doors' that it should include only the side doors of a vehicle or also the lid or cover of the trunk, a most satisfactory guide to the legislative intention would be the apparent evils sought to be prevented, namely, the breaking into the interior sections of locked cars. Manifestly, making the offense a felony would tend to minimize the frequency of such unlawful acts. It is apparent that that purpose could not be adequately accomplished by denouncing as a felony entry by the breaking or opening of locks of the side doors without also making it an equally serious offense to enter a locked trunk compartment for the purpose of committing theft. The trunks or luggage compartments of automobiles are fitted with locks for the very reason that they furnish a convenient place for the carrying of things of value." The court then concluded (at p. 467): "There is room for difference of opinion whether the cover of a luggage compartment would generally be included in the term 'doors' but we believe any doubts as to the meaning

to be given it in construing the statute is removed when effect is given to the purpose of the statute, namely, to make it a more serious offense to break into the interior of a car than to merely steal something from it. We are therefore of the opinion that the act of entering the trunk of an automobile for the purpose of theft, when the door of the trunk and all other doors are locked is burglary."

In *People* v. *Blalock* (1971) 20 Cal.App.3d 1078 [98 Cal.Rptr. 231], the evidence established, as in *Toomes,* that the defendant took property from a locked trunk. On appeal, the defendant contended the trial court erroneously refused to instruct the jury that *all* the doors *and* trunk of the car had to be locked in order to constitute auto burglary. The court rejected this argument, stating: "It would be ridiculous to make the existence of burglary turn on the locked or unlocked state of an area not involved in the entry. If the entry is made by unlocking the trunk door, it is immaterial that some other door, leading to some other space, was unlocked." (*Id.* at p. 1083.)

The Attorney General next turns to *People* v. *Massie* (1966) 241 Cal.App.2d 812 [51 Cal.Rptr. 18]. That case involved a truck-tractor to which were attached two semi-trailers. At the time of the incident the doors of the tractor were not locked. One of the trailers was padlocked. The doors on the other trailer were sealed by a metal clip. The defendant was discovered in this latter trailer and the metal seal on the door had been broken.

On appeal, the defendant made the following contention: "[T]he court erred in giving the following two instructions: (1) '. . . that the word "lock" means to make fast by the interlinking or interlacing of parts.' (2) 'If you find as a matter of fact that all the doors of the semi-trailer were secured with metal seals such as Exhibit No. 1 in evidence prior to the entry, and that application of some force was required to break the seal to permit entry to the interior of the vehicle through the door, then such vehicle was locked within the meaning of the law.' " (*Id.* at p. 817.) The Court of Appeal approved these instructions. (*Id.* at pp. 818-819.)[1]

Based upon this trilogy of cases (*Toomes, Blalock* and *Massie*), the Attorney General contends the auto burglary statute should be construed

[1]Although not cited by defendant, the Attorney General distinguishes *People v. Burns* (1952) 114 Cal.App.2d 566 [250 P.2d 619], since in that case there was *no* testimony that the doors were locked and *no* testimony as to when the wind wing was broken. The distinction appears to be valid. (*People v. Lombardi* (1962) 205 Cal.App.2d 803, 805 [23 Cal.Rptr. 325].)

flexibly with the principal objective of discouraging the social evil which that statute was designed to prevent.[2] He contends this is in accord with Penal Code section 4, which provides: "The rule of the common law, that penal statutes are to be strictly construed, has no application to this code. All its provisions are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice."

■ When an accused is charged with an offense defined in terms subject to two reasonable constructions, the construction favorable to the defendant is ordinarily adopted. This does not mean, however, that the language of the statute must be stretched and strained beyond the limitation of reason. (*Downing* v. *Municipal Court* (1948) 88 Cal.App.2d 345, 349 [198 P.2d 923].) In *People* v. *Crenshaw* (1946) 74 Cal.App.2d 26, 29 [167 P.2d 781] (quoting with approval from 2 Lewis' Sutherland Stat. Constr. (2d ed.), we stated: " 'A penal statute should receive a reasonable and common sense construction, and "its force should not be frittered away by niceties and refinements at war with the practical administration of justice." The principle of strict construction does not allow a court to make that an offense which is not such by legislative enactment; but this does not exclude the application of common sense to the terms made use of in an act in order to avoid an absurdity which the legislature ought not to be presumed to have intended.' "

Under the facts of this case, and based upon the foregoing authorities, the Attorney General concludes a case of auto burglary was established.[3]

Defendant sets forth a three-pronged argument: He first contends the statute must be interpreted literally, i.e., the door was not locked since the wind wing could be opened. Secondly, he argues that the statute, by necessary implication, requires a "breaking," and that element is missing here. Finally, defendant argues that it is the policy of this state to construe a penal statute as favorably to the defendant as its language and circumstances reasonably permit. (See *Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420].)

[2]See *State* v. *Richter* (1969) 152 Mont. 449 [451 P.2d 833] (wrongful entry into enclosed automobile engine compartment constitutes burglary).

[3]As an aside, the Attorney General states the *Toomes* and *Massie* cases imply that the locked door requirement of Penal Code section 459 may impart a "breaking" element into the statute. He analogizes this to the breaking element of common burglary. (See 13 Am.Jur.2d, Burglary, § 8, pp. 324-325.) He concludes the entry effected here was sufficient to constitute "breaking" into an automobile. Such an argument, however, would appear to be in derogation of the argument that strict common law construction should not apply.

We are here presented with an anomalous situation, one which the Legislature surely did not anticipate. For all intents and purposes the car in question was locked. By mere happenstance, one wind wing was faulty and could not be tightly secured, thereby allowing the defendant to gain entrance into the car.

A literal reading of the statute supports the defendant's view. However, we decline to accept the defendant's position since we are persuaded by the Attorney General's principal argument.

■ We have concluded the import of *Toomes, Blalock* and *Massie* is that common sense construction must be used in interpreting Penal Code section 459. We are convinced that the auto burglary statute should be construed flexibly with the principal objective of discouraging the social evil which that statute was designed to prevent.[4] Penal Code section 4 also supports our position.[5] Accordingly, we hold that, under the facts of this case, auto burglary was established, and therefore the trial court erred.

The order dismissing the Penal Code section 459 charge against defendant is reversed.

Puglia, P. J., and Evans, J., concurred.

A petition for a rehearing was denied April 29, 1975, and respondent's petition for a hearing by the Supreme Court was denied June 11, 1975.

---

[4]In *State* v. *Richter, supra,* 451 P.2d at page 835, the Supreme Court of Montana states: "Manifestly, making the offense [breaking into a car] a felony would tend to minimize the frequency of such unlawful acts. In construing legislative intent the courts of this state construe criminal statutes according to the fair import of their terms, with a view to effect their object and promote justice."

[5]In so holding, we do not feel that we are in any way enlarging the scope of the statute. (See *Keeler* v. *Superior Court, supra,* 2 Cal.3d at pp. 632-633.) In fact, an opposite holding could lead to absurd results, such as an owner of a car who cracks his window an inch or two so that his dog does not suffocate. Nevertheless, our decision herein is based on the precise facts presented to us.