[No. A037522. First Dist., Div. Two. Apr. 14, 1988.]

In re LAMONT R., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
LAMONT R., Defendant and Appellant.

COUNSEL

Cynthia Podren, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Ronald E. Niver and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

SMITH, J.—In 1985, Lamont R. was judged to be a ward of the court and was ordered to comply with the terms of a home probation contract (Welf.

& Inst. Code, § 602). On July 15, 1986, petitions were filed charging Lamont with attempted vehicular burglary and requesting that the prior probation order be modified (Pen. Code, §§ 459, 664; Welf. & Inst. Code, § 777, subd. (a)). After denying a motion to dismiss for insufficient evidence, the court found the allegations to be true beyond a reasonable doubt. Appellant appeals from the finding and subsequent disposition order.

## BACKGROUND

David Worley testified that on the evening of July 11, 1986, he parked a Santa Fe trailer loaded with cases of wine on 98th Avenue in Oakland, and drove away in the cab. The rear trailer doors were locked with a master padlock and fastened with a metal shipment seal. The door handles pass over an eyebolt; a lock and shipment seal were fastened through the eyebolt. The shipment seal was secured through the eyebolt after the truck was fully loaded, and the doors could not be opened unless the seal was cut off or broken. The seal cannot be unfastened and later resealed.

At 11:56 p.m. on July 12, 1986, Officer Fausto Melara arrived at the trailer to investigate a reported burglary. He found the rear doors of the trailer open and observed that the contents had been disturbed. He found a broken shipment seal inside the truck but did not find any lock. Officer Melara closed the doors and latched them at top and bottom. He closed the swivel that goes over the latches. He then secured the doors with two chains that were fixed to the center of each door. Each chain had a hook at its end. Officer Melara wrapped the chains around each other and hooked them into the hooks on opposite sides of the doors. He then directed a police dispatcher to send for a tow truck and waited in his patrol car approximately 150 feet away.

About an hour later Officer Melara observed appellant and another male walking southbound on 98th Avenue. They walked past the trailer, looked around, and then returned to the rear doors. Appellant and his companion unhooked the chains, unfastened the latches and pulled open at least one door. Officer Melara testified that "just as it looked at that time that the [appellant] was about to climb in, [a] truck came." Apparently startled by the oncoming truck, appellant slammed the door shut and walked away. Officer Melara took both boys into custody.

## APPEAL

The trial court appears to have based its decision on one of two alternative findings: either that the trailer was locked within the meaning of Penal Code section 459 (hereafter, section 459), or that the trailer belongs to a

class of vehicles which, by the terms of section 459, may be burglarized even though unlocked. The Attorney General concedes that the trailer qualified as a vehicle which, under the Vehicle Code, needed to have been "locked" in order for appellant to have committed the crime charged. ■ The only issue therefore is whether the trailer was locked within the meaning of section 459. The facts are not in dispute and the question appears to be one of law. (See *People* v. *Massie* (1966) 241 Cal.App.2d 812, 818 [51 Cal.Rptr. 18].)

Section 459 provides, in part: "Every person who enters any house, . . . [or] vehicle as defined by the Vehicle Code *when the doors are locked* . . . with intent to commit grand or petit larceny or any felony is guilty of burglary." (Italics added.) ■ An essential element of vehicular burglary under this section is that the vehicle must be locked. (*People* v. *Woods* (1980) 112 Cal.App.3d 226, 230 [169 Cal.Rptr. 179]; *In re Charles G.* (1979) 95 Cal.App.3d 62, 65 [156 Cal.Rptr. 832].) " '[T]he word "lock" means to make fast by the interlinking or interlacing of parts . . . [such that] some force [is] required to break the seal to permit entry . . . .' " (*People* v. *Massie, supra,* 241 Cal.App.2d at p. 817, approving of an instruction.) The Oxford English Dictionary defines "lock" as "1. An appliance for fastening a door, lid, etc., consisting of a bolt (or system of bolts) with mechanism by which it can be propelled and withdrawn by means of a key or similar instrument." (6 Oxford English Dict. (1978) p. 383.)

■ The uncontroverted testimony shows that the doors were locked and sealed when Mr. Worley left the van on July 11. By the time Officer Melara appeared on the scene, the shipment seal was broken and the padlock removed by persons unknown. Since there was no way to lock the doors, Melara closed the doors, wrapped two chains around each other and hooked them into opposite bolts. No force was needed, no seals were broken to gain entry. Appellant simply unhooked the chains, unfastened the latches, and pulled open the door.

The language of section 459 shows that the Legislature intended it to be a more serious crime to enter a locked vehicle than an unlocked one. The crime of burglary is committed when a person, with the requisite intent, enters a dwelling or a defined class of vehicles, whether locked or unlocked. But the Legislature specifically required locking as an essential element of common vehicular burglary. We would *do violence to this relatively clear* statutory directive if we were to find that the chain and hook contraption improvised by Officer Melara constituted a lock. A door held shut with masking tape would have been just as easy to open.

The Attorney General relies on *People* v. *Malcolm* (1975) 47 Cal.App.3d 217 [120 Cal.Rptr. 667]. In *Malcolm,* an automobile was left parked with all

its windows closed and all its doors locked. One wing window, although closed, had a broken latch. The defendant forced open the wing window, reached inside and unlocked the door. The car was deemed locked. The court stated, "For all intents and purposes the car in question was locked. By mere happenstance, one wind wing was faulty and could not be tightly secured . . . ." (*Id.,* at p. 223.)

*Malcolm* is distinguishable from the present case. In *Malcolm,* there was evidence of forced entry: "The wind wing was broken, the latch on the wind wing was broken, and there were smudge marks on the window indicating where pressure had been applied to the wind wing." (*Id.,* at p. 220.) Having achieved forced entry into the interior of the vehicle, the defendant then reached in and disengaged the locking mechanism which secured the doors. (*Id.,* at p. 219.) The court concluded that a "common sense construction" of the statute dictated that the defendant's conduct fell within the evil which the Legislature sought to prevent. (*Id.,* at p. 223.) By contrast, appellant used no pressure; he broke no seal; he disengaged no mechanism that could reasonably be called a lock.

The Attorney General also argues that "locked" should be construed to mean "secured insofar as possible," and that Officer Melara's conduct met this test. We reject this argument. If such were the case any car door or trunk without a functioning lock would be deemed "locked" merely by the owner's act of closing it. Such an interpretation is clearly inconsistent with the Legislature's intent that unauthorized entry into a locked vehicle be deemed a more serious crime than unauthorized entry of one that is not locked.[1]

The Attorney General also argues that we should construe section 459 "flexibly" with the principal objective of discouraging the social evil which the statute was designed to prevent. But we cannot construe the statute so as to reach a "social evil" that is not within the reasonable meaning of its terms. Moreover, punishing a person for a crime he did not commit is a social evil of a less apparent, but perhaps more sinister kind. When society fails to follow its own rules, it engenders less, not more, respect for the law. ■ As we stated in *People* v. *Woods, supra,* 112 Cal.App.3d 226, "'It is the policy of this state to construe a penal statute as favorably to the defendant as its language and the circumstances of its application may reasonably permit . . . .'" (*Id.,* at p. 231, quoting *Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d

[1] We do not mean to imply that appellant's conduct was legal. The acts described by Officer Melara might well have been sufficient to constitute auto tampering (Veh. Code, § 10852), a misdemeanor and lesser included offense within the more serious crime of vehicular burglary. (*People* v. *Mooney* (1983) 145 Cal.App.3d 502, 504 [193 Cal.Rptr. 381].)

420].) "[A]mbiguities in penal statutes must be construed in favor of the offender, not the prosecution." (*In re Jeanice D.* (1980) 28 Cal.3d 210, 217 [168 Cal.Rptr. 455, 617 P.2d 1087].) "This is not quixotic quibbling; we deal here with principles fundamental to any government under law. A democratic state cannot jail people for anti-social conduct, but only for acts declared by the legislature to be criminal . . . ." (*People* v. *Moreland* (1978) 81 Cal.App.3d 11, 15 [146 Cal.Rptr. 118].) "The question is not whether defendant did a bad thing and should have known that his conduct was morally wrong; the question is whether defendant did the act proscribed by the statute under which he was charged." (*Id.*, at p. 19.)

■ We hold that under these facts, the acts committed did not fall within the proscription of section 459.

## DISPOSITION

The findings and disposition order appealed from are reversed.

Kline, P. J., and Rouse, J., concurred.