**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gregory Lee CHATMAN,
Defendant–Appellant.**

**No. 87–5351.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 1, 1988.

Decided March 9, 1989.

H. Dean Steward, Federal Public Defenders, Santa Ana, Cal., for defendant-appellant.

Harriet M. Rolnick, Los Angeles, Cal., for plaintiff-appellee.

Before FLETCHER, CANBY and O'SCANNLAIN, Circuit Judges.

CANBY, Circuit Judge:

## INTRODUCTION

In 1984 the United States Congress enacted the Armed Career Criminal Act, 18 U.S.C.App. § 1202(a) (repealed and later incorporated into 18 U.S.C. § 924(e)(1)) ("the Act"). The Act provides a mandatory 15 year prison sentence for "a person who violates section 922(g) [firearm offense] . . . and has three previous convictions by any court . . . for a violent felony. . . ." Violent felony is defined to include within its provisions "burglary." 18 U.S.C. § 924(e)(2)(B)(ii).

Appellant Gregory L. Chatman was caught stealing property from an unoccupied car. A patdown search revealed a gun in his waistband. He was indicted under 18 U.S.C. § 922(g)(1) for being a felon in possession of a firearm. Chatman was sentenced under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), to fifteen years in federal prison, without the possibility of parole, probation or a suspension of sentence. Chatman had previously pleaded guilty to three other counts of "auto burglary" under California law. In each of the prior instances, Chatman was unarmed.

## ISSUE

Chatman attacks his enhanced sentence on several grounds. We do not reach most them,[1] for we find the following issue dispositive:

Does "auto burglary," defined by California to include unarmed theft from an unoccupied locked vehicle, qualify as a "burglary" under 18 U.S.C. § 924, which mandates a fifteen year prison sentence for violators with three prior convictions

---

1. Chatman contends that the district court erred in refusing to permit him collaterally to attack his prior convictions. *See United States v. Clawson,* 831 F.2d 909, 914 (9th Cir.1987), *cert. denied,* —— U.S. ——, 109 S.Ct. 303, 102 L.Ed.2d 322 (1988). He also contends that the requisite prior convictions must be serial, not overlapping in time. *But see United States v. Wicks,* 833 F.2d 192, 193 (9th Cir.1987), *cert. denied,* —— U.S. ——, 109 S.Ct. 87, 102 L.Ed.2d 63 (1988). Finally, he contends that his 15 year sentence constituted cruel and unusual punishment. *But see United States v. Baker,* 850 F.2d 1365, 1372 (9th Cir.1988).

of "violent felony," specifically including "burglary"?

We conclude that it does not. We therefore vacate Chatman's sentence and remand for resentencing.

## STANDARD OF REVIEW

Interpretation and application of the Armed Career Criminal Act calls for de novo review. *See e.g., United States v. Henderson,* 746 F.2d 619 (9th Cir.1984) *aff'd,* 476 U.S. 321, 106 S.Ct. 1871, 90 L.Ed. 2d 299 (1986). Because it is a penal statute, the Act is to be strictly construed in favor of the accused. *United States v. Gilbert,* 813 F.2d 1523, 1526 (9th Cir.) *cert. denied,* —— U.S. ——, 108 S.Ct. 173, 98 L.Ed.2d 127 (1987) (citing to *United States v. Kelly,* 527 F.2d 961, 964 (9th Cir.1976)). A penal statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed. 2d 903 (1983).

## DISCUSSION

*Auto Burglary*

■ Chatman argues that auto burglary is not a violent felony within the meaning of the Act. The Government responds that *all burglaries* are "violent felonies" encompassed within the Act's provision for "burglary." The Act provides as follows:

[t]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B)(ii). The Fourth Circuit recently held that the term "burglary" in the Armed Career Criminal Act is to be given its common law definition. *United States v. Headspeth,* 852 F.2d 753 (4th Cir.1988). Because we wish to avoid creating an unnecessary intercircuit conflict on this novel issue, *see e.g., United States v. Gwaltney,* 790 F.2d 1378, 1388 n. 4 (9th Cir.1986) *cert. denied,* 479 U.S. 1104, 107 S.Ct. 1337, 94 L.Ed.2d 187 (1987), and because we agree with the Fourth Circuit's reasoning in *Headspeth,* we hold that, by leaving the term burglary undefined, Congress intended it to have its common law meaning. "Burglary" therefore means the breaking and entering of the dwelling house of another, in the nighttime, with the intent to commit a felony therein. *Headspeth,* 852 F.2d at 757.

The statute does not by its terms define "burglary," but the context suggests that Congress had in mind something more dangerous than theft from a locked vehicle. The enhancement provision refers to a crime that "is burglary, arson, or extortion, involves use of explosive, or *otherwise presents a serious potential risk of physical injury* to another." 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added). Burglary is entirely out of place in that list unless it is defined so that it describes a crime engendering serious risk of injury to persons. Although the government suggests that theft from an automobile may end in such injury, that rationale, based on mere possibility, would make virtually every property crime violent. The words of the statute simply do not support such a broad reading.

Neither does the legislative history, some aspects of which we examined in *United States v. Sherbondy,* 865 F.2d 996 (9th Cir.1988). The scope of the Act was the subject of much debate and the final version of the bill overrode amendments which sought specifically to define the term "burglary." A rejected provision would have expanded the common law term. *See Armed Career Criminal Legislation: Hearing on H.R. 4639 and H.R. 4768 Before the Subcomm. on Crime of the House Comm. on the Judiciary,* 99th Cong., 2d Sess. 44 (May 21, 1986) ("Hearing"). Another rejected provision would have led to a broad inclusion of property crimes. H.R. 4639, 99th Cong., 2d Sess. (1986). An amendment which would have defined the predi-

cate offenses by reference to "an element [involving] the use, attempted use or threatened use of physical force against the person of another," H.R. 4768, 99th Cong., 2d Sess. (1986), was turned down because it would exclude violent crimes against property. The final version sought to bridge the gap between those who would include a wide variety of property crimes and those who would include only offenses with an element of force against the person. *See Sherbondy*, 865 F.2d at 1007.

Senator Arlen Specter, principal sponsor of the bill, stated that the purpose of the legislation was to incapacitate that small segment of the criminal population that is responsible for the great majority of crimes. 130 Cong.Rec. S. 13080 (daily ed. Oct. 4, 1984). In view of the need to respect the states' traditional role in enforcement of common law crimes, and in light of scarce federal investigative resources and limited prison space, the law's mandatory 15 year term aimed to strike at "career criminals [who] would be among the worst and most deserving of being incarcerated." 130 Cong.Rec. S. 1559 (daily ed. Feb. 23, 1984) (statement by Sen. Specter). The record before us makes it hard to believe that this is what we are dealing with here, reprehensible as it may be to steal property from locked automobiles.

The Act was designed to keep a distance between state and federal criminal law. It does not create a new Federal crime, *United States v. West*, 826 F.2d 909, 912 (9th Cir.1987), but merely enhances the penalty for the existing Federal offenses relating to firearms. "It would not permit the Federal prosecution of any individual who could not be prosecuted under current Federal law, and would not trespass upon any State prosecution or require Federal courts to apply State law." 130 *Cong.Rec.* S. 13080 (daily ed. Oct. 4, 1984) (statement of Sen. Specter). Congress did not seek a "radical expansion of Federal jurisdiction over common law crimes." H.R.Rep. No. 1073, 98th Cong., 2d Sess., 5 (1984), *reprinted in* 1984 U.S.Code Cong. & Admin. News 3661, 3665.

State criminal statutes define burglary in a multiplicity of ways. Definitions range from the common law view, to entering a building with intent to commit a felony, to simple shoplifting. *See generally*, W. La Fave and A. Scott, *Substantive Criminal Law*, § 8.13 ("Substantive Criminal Law"). Yet Congress was of the view that enhancement under the Act "would not put Federal courts in a position of having to interpret and apply State laws on robbery and burglary in Federal criminal trials." H.R.Rep. 1073 at 5–6, 1984 U.S.Code Cong. & Admin.News at 3665. Nor did Congress intend to punish the state crime itself. "It appeared to the Subcommittee [on Crime], therefore, that although there was a need to extend some Federal aid to curb these career criminals there were serious reservations as to the appropriateness of prosecutions of local burglaries or robberies under a Federal statute." H.R. 1073 at 4, 1984 U.S.Code Cong. & Admin.News at 3664.

The overwhelming impression created by the legislative history is the same as that which we gleaned from the structure of section 924(e)(2)(B)(ii): Congress intended "burglary" to be a crime of particular danger to the person, and not to include all of the common property offenses that states might choose to denominate as burglary. As we said in *Sherbondy*, the provision as finally enacted "includes four specific categories of property crime, each of which Congress believed involves conduct which poses a particularly serious 'risk of injury to another.'" *Sherbondy*, 865 F.2d 1009.

■ The California statute under which Chatman was previously convicted provides in pertinent part:

> Every person who enters any house, room, apartment, shop, warehouse, store, ... [or] vehicle as defined by the Vehicle Code when the doors are locked, ... with intent to commit grand or petit larceny or any felony is guilty of burglary.

Cal.Penal Code § 459. Each information under which Chatman was convicted charged him with violation of this provision in that, on a particular date, he "did willfully and unlawfully enter a motor vehicle

[described], the property of [named person], the doors of said motor vehicle being locked, with the intent to commit larceny." Under the California statute, no force against the vehicle need be proved; entry by way of a wing window that is unable to be fastened has been held to be burglary. *People v. Malcolm,* 47 Cal.App.3d 217, 120 Cal.Rptr. 667 (1975). We are unable to square this definition of burglary [2] with the congressional intent embodied in § 924(e)(2)(B)(ii).

Because the California definition is inappropriate, and the federal statute does not provide one, we follow the Fourth Circuit in selecting the common law definition. "Absent more persuasive evidence that Congress intended the term 'burglary' in amended section 924(e)(2)(B) to mean something else, we are reluctant to depart from the usual presumption that Congress intended the term to be given its common law meaning." *Headspeth,* 852 F.2d at 758. "When Congress uses a common law term like burglary in a federal criminal statute without otherwise defining it, Congress is presumed to adopt the meaning given that term at common law." *Id.* at 757 (citing to *Morrissette v. United States,* 342 U.S. 246, 263, 72 S.Ct. 240, 249, 96 L.Ed. 288 (1952).

Moreover, the common law elements of breaking and entering a dwelling house in the nighttime embody a high risk of injury to persons, far more than that accompanying the general run of property offenses. The common law definition, therefore, is well suited to Congress' purposes. It strikes at some of the "worst and most deserving" criminals, 130 Cong.Rec. § 1559 (daily ed. Feb. 23, 1984), and avoids such "bizarre results" as enhancement on the basis of such crimes as shoplifting. *See* La Fave & Scott, Substantive Criminal Law § 8.13 at 477 (referring to Model Code definition of burglary).

The government's brief suggests one other approach to Chatman's prior convictions. It argues that Chatman was armed

during his last car burglary, and that circumstance can well indicate a serious risk of injury. Thus, the argument goes, if auto burglary does not as a *category* qualify as "burglary" within the meaning of section 924(e)(2)(B)(ii), *some* auto burglaries ought to qualify, if not under that clause, then as crimes that "otherwise present[ ] a serious potential risk of physical injury to another." *Id.*

We rejected a very similar proposition in *Sherbondy,* where we held that the California witness intimidation statute did not define a "violent felony" within the meaning of section 24(e)(2)(B)(ii). Concerning that entire subsection, we stated:

> One conclusion we draw from our review of the legislative history is that Congress consistently discussed subsection (ii) in categorical terms; i.e., in terms of what offenses it would include. There is no indication that Congress intended that a particular statutory or common law crime would in some circumstances constitute a violent felony and in other circumstances not, depending on how the offense was committed.

*Sherbondy,* 865 F.2d at 1008. We pointed out that treatment of prior convictions other than categorically would involve the sentencing federal court in a series of "ad hoc mini-trials" long after the events in issue had passed. *Id.* at 1008. Finally, we noted that the Fourth Circuit had adopted a categorical approach, holding that its inquiry was limited to the nature of the offense defined in the state statute: only "offenses which, as defined, pose *by their very nature* a serious potential risk of injury to another" qualified as "violent felonies" within the meaning of the catchall provision of subsection (ii). *Sherbondy,* 865 F.2d at 1006–07 (quoting *Headspeth,* 852 F.2d at 759).

The reasoning of *Sherbondy* and *Headspeth,* as well as our own analysis, causes us to reject the government's individualized approach. Section 924(e)(2)(B)(ii) addresses categories of crimes, both in its reference

---

**2.** Other examples are presented by the California statute. Burglary includes entry of a store during hours when it is open to the public, with the intent to commit theft (i.e., shoplifting). *See People v. Wilson,* 160 Cal.App.2d 606, 325 P.2d 106 (1958).

to "burglary" and its catchall reference to crimes that "otherwise present[ ] a serious potential risk of physical injury to another." At least in the absence of express direction or legislative history to the contrary, the rule of lenity requires us so to interpret it. *See Sherbondy,* 865 F.2d at 1009 & n. 17. *Headspeth,* 852 F.2d at 758–59.

Under a categorical approach, the result is clear. Auto burglary, as defined by the California Penal Code, may be proved without establishing the elements of common law burglary. It also may be proved without establishing, as necessary elements of any conviction under the statute, conduct that "presents a serious potential risk of harm to another." Convictions for auto burglary consequently cannot serve as a basis for enhancement under section 924(e)(2)(B)(ii). *See Sherbondy,* 865 F.2d at 1011.

## CONCLUSION

Chatman's prior convictions for auto burglary do not subject him to an enhanced sentence under 18 U.S.C. § 924(e)(2)(B)(ii) because that crime, as defined by the state statute does not meet the common law definition of burglary. Nor is it a crime that by its very nature "otherwise presents a serious potential risk of injury to another," within the meaning of that section. We vacate Chatman's sentence and remand to the district court for resentencing.

SENTENCE VACATED, REMANDED FOR RESENTENCING.

O'SCANNLAIN, Circuit Judge, dissenting:

I dissent from the majority's holding, which follows the Fourth Circuit's recent holding that Congress intended to apply the common law definition of burglary for purposes of implementing the sentence enhancement statute. *See United States v. Headspeth,* 852 F.2d 753 (4th Cir.1988). Although, like the majority, I am loath to create an unnecessary circuit split, using the common law definition creates so many practical and interpretive difficulties that I am persuaded that Congress did not intend

it. Instead, Congress clearly expected to take a state burglary conviction as it finds it on a defendant's rap sheet.

First, my survey of the laws of the fifty states and the District of Columbia indicates that only two states, Maryland and Virginia, retain all elements of the common law crime of burglary (and even these two states seem to use a definition of "nighttime" different from that used at common law). Thus, a burglary conviction in every jurisdiction except these two would require a federal court to conduct an inquiry into whether one or more of the elements has been satisfied. Not only is this procedure cumbersome, but it seems likely that if Congress had intended federal courts to follow the unusual procedure of investigating the factual circumstances of individual crimes for purposes of applying the sentence enhancement statute that it would have said so explicitly. In addition, I find it hard to believe that Congress would have included the term "burglary" in a federal statute merely to reach burglary convictions under the laws of Maryland and Virginia.

Second, the common law definition of burglary is so esoteric as to defy easy application, which suggests that Congress did not intend the federal courts to attempt to apply it. At common law, each element of the crime was elaborated in extreme detail, and most were defined so as to differentiate between types of action that seem practically indistinguishable, at least from the point of view of danger created. For example, an actual "breaking" was required—entry through an open door or window was insufficient, although coming down the chimney was considered breaking. Similarly, night was generally defined as the time during which there was enough daylight to discern a person's face. Common law decisions likewise interpreted "dwelling-house" in an extremely particularized sense, including buildings within the "curtilage," that is, nearby barns, stables, or dairy houses near, or within "bow-shot" of the main building. It seems unlikely that Congress contemplated that federal courts would attempt to reinstate these

arcane distinctions between various types of offenses.

Theoretically, some of these difficulties might be avoided by using the catchall term "otherwise presents a serious potential risk of physical injury to another" to enhance the sentences of those convicted of a "burglary," that does not fit the common law definition. However, this approach has two problems. First, it essentially reads the term "burglary" out of the statute, because the term will now only apply to an extremely small number of cases which fit all the convolutions of the common law definition. Second, I think this approach will still not reach the vast majority of state burglary statutes, under the categorical analysis correctly adopted by the court. Most state statutes include offenses that do not necessarily involve any serious risk of physical injury to another, because, like the statute at issue in this case, they punish the burglary of unoccupied structures. Even the common law definition of burglary does not require that the dwelling house be occupied at the time of the burglary. Thus, contrary to congressional purposes, crimes generally defined as burglary would not qualify for sentence enhancement, unless we read the catchall provision in a much broader sense than in the proposed opinion.

In my view, it seems more probable to assume that Congress meant the federal courts to examine only the language of the relevant state statutes and generally accept the state statutory definitions of burglary. This does not mean that the courts would accept as burglary for purposes of section 924 whatever definition the state chooses to give it. As the Supreme Court has noted, when borrowing state law, "specific aberrant or hostile state rules do not provide appropriate standards for federal law." *United States v. Little Lake Misere Land Co.*, 412 U.S. 580, 596, 93 S.Ct. 2389, 2398, 37 L.Ed.2d 187 (1973). Thus, for example, the fact that a state defined the offense of jaywalking as "burglary" would not satisfy the definition of burglary for purposes of section 924 if classifying such an offense as "burglary" was not Congress' intent. Where the state statute de-

viates sufficiently from what Congress intended the courts might be forced to state that no conviction under the statute would count for section 924(e)(1) enhancement purposes. As a practical matter, the likelihood of such event is remote, the majority's opinion to the contrary notwithstanding. In my view, none of the existing state statutory definitions of burglary fall into this category.

It is not at all surprising to me that California dignifies its citizen's car as highly as one's home. Indeed, in California one's car may indeed be more sacrosanct than one's dwelling. Congress could not possibly have meant to penalize the citizens of California for thinking that the contents of a locked car are entitled to as much protection from theft as the contents of an apartment.

For these reasons, I would affirm Judge Keller in his determination that the crime committed was a "burglary" and therefore a "violent felony" under the federal sentence enhancement statute.