[Crim. No. 21252. First Dist., Div. Three. June 26, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIE STEPNEY, Defendant and Appellant.

COUNSEL

William H. Du Bois and Du Bois & Hove for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien and William D. Stein, Assistant Attorneys General, Robert R. Granucci and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

SCOTT, Acting P. J.—Appellant, Willie Stepney, was convicted of a violation of Penal Code section 246 which prohibits discharging a fire-

arm at an inhabited dwelling. He contends and we agree that shooting a firearm inside of an inhabited dwelling, and more particularly shooting a television set inside such a dwelling, is not proscribed by that statute.

Carmen Posey, her two young children, and her friend Errol Walker lived together at a home in San Pablo. One evening, when Walker was not at home, appellant Willie Stepney and two other men arrived, looking for him. When Carmen did not let them in, appellant began kicking at the door. Carmen went to call police, and appellant apparently climbed in through a window. Armed with a gun, he asked for "his money," which he claimed Walker owed him.

Appellant told Carmen, "This is syndicate business and we are not playing any games." He then fired a bullet into the television set. Appellant denied going to Carmen's home and denied shooting the television set.

Based upon the evidence that appellant stood in Posey's living room and shot her television set, appellant was convicted of violating Penal Code section 246.[1]

Penal Code section 246 provides in relevant part: "Any person who shall maliciously and willfully discharge a firearm *at* an inhabited dwelling house, occupied building, occupied motor vehicle, inhabited house car ... or inhabited camper ... is guilty of a felony .... As used in this section, 'inhabited' means currently being used for dwelling purposes, whether occupied or not." (Italics added.)[2] ▮ Appellant contends section 246 only prohibits shooting at the specified structures or vehicles from the outside; the People read the statute more broadly, and argue that it prohibits shooting at the listed targets from inside or out. The question is one of first impression in this state.

---

[1] Appellant was acquitted of a violation of Penal Code section 211 (robbery) and Penal Code section 245, subdivision (a) (assault with a deadly weapon). A Penal Code section 459 burglary charge was dismissed by the court after the jury failed to agree as to that count. We cannot tell from the record whether the television set was fatally wounded.

[2] As originally enacted in 1949, the statute prohibited the malicious and wilful discharge of a firearm at an "inhabited dwelling house or occupied building." (Stats. 1949, ch. 698, § 1, p. 1200.) As amended in 1976, the statute was also made applicable to shooting at an "occupied motor vehicle," formerly prohibited by Vehicle Code section 23110. In 1977 the statute was amended to include an inhabited house car or inhabited camper within its scope. (Stats. 1976, ch. 1119, § 1, p. 5023; Stats. 1977, ch. 690, § 1, p. 2220.)

The fundamental rule of statutory construction is that the court ascertain legislative intent so as to effectuate the purpose of the law. (*Hogya* v. *Superior Court* (1977) 75 Cal.App.3d 122, 132 [142 Cal. Rptr. 325].) ▮ The provisions of the Penal Code are to be construed "according to the fair import of their terms, with a view to effect its objects and to promote justice." (Pen. Code, § 4.) Nonetheless, the court cannot create an offense by enlarging a statute, by inserting or deleting words, or by giving the terms used false or unusual meanings. (*People* v. *Baker* (1968) 69 Cal.2d 44, 50 [69 Cal.Rptr. 595, 442 P.2d 675].) The court must give effect to statutes according to the usual, ordinary import of the language employed in framing them. When statutory language is clear and unambiguous, there is no need for construction, and courts should not indulge in it. (*People* v. *Belleci* (1979) 24 Cal.3d 879, 884 [157 Cal.Rptr. 503, 98 Cal.Rptr. 473].)

▮ If, however, the court perceives an ambiguity in the statute, it is well settled that the court must construe that ambiguity in favor of the defendant. When language reasonably susceptible of two constructions is used in penal law, ordinarily that construction more favorable to the defendant will be adopted. The defendant is entitled to the benefit of every reasonable doubt as to the true interpretation of words or the construction of language used in a statute. (*In re Jeanice D.* (1980) 28 Cal.3d 210, 217 [168 Cal.Rptr. 455, 617 P.2d 1087].)

▮ Appellant urges that the usual and ordinary import of the language of the statute leads immediately to the conclusion that section 246 only forbids shooting *at* the specified structures and vehicles from the outside. However, "at" is a word of many meanings.[3] An argument can be made that one can shoot *at* a building or automobile from within as well as from without. Nevertheless, even if section 246 is ambiguous and reasonably susceptible to both the narrow reading urged by appellant and the broader reading urged by the People, the court must construe that ambiguity in favor of appellant, unless to do so would result in an absurdity which the Legislature should not be presumed to have intended. (*People* v. *Malcolm* (1975) 47 Cal.App.3d 217, 222 [120 Cal.Rptr. 667].)

---

[3]"At" is "[a] preposition of extremely various use, to which lexicographers have given many definitions and shades of meaning. It is a word of great relativity and elasticity of meaning and is somewhat indefinite, shaping itself easily to varying contexts and circumstances, and taking its color from the circumstances and situation under which it is necessary to apply it to surrounding objects. Aside from its context, it is not a word of precise and accurate meaning, or of clean, clear-cut definition, and it has been said that the connection furnishes the best definition." (7 C.J.S. 192.)

Other than the statutory language itself, there are few clues to legislative intent. Both appellant and the People point out that as originally proposed, section 246 forbade discharging a weapon *into* a dwelling, but in the bill as enacted, *into* was changed to *at*. (1 Assem. J. (1949 Reg. Sess.) p. 1760.) Appellant reads that change as intended merely to enable prosecution of those who discharge a weapon at a building but miss; the People, on the other hand, read that prepositional change as intended to enable prosecution of all those who shoot at a building, regardless of whether they fire from outside in or inside out, hit or miss. Appellant's explanation seems more plausible.[4]

We find no state statute explicitly prohibiting the discharge of a firearm inside a residence or for that matter within any public place. Local ordinances have been adopted prohibiting the discharge of firearms within city limits. (E.g., § 9.36.010 of the San Pablo Municipal Code.) It also appears that appellant here could have been charged with misdemeanor violation of Penal Code section 417. That section provides: "(a) Every person who, except in self-defense, in the presence of any other person, draws or exhibits any firearm, whether loaded or unloaded, ... in a rude, angry or threatening manner, or who in any manner, unlawfully uses the same in any fight or quarrel is guilty of a misdemeanor." The firing of a weapon to frighten someone rather than with intent to injure is conduct which comes within the scope of section 417. (See *People* v. *Wilson* (1967) 66 Cal.2d 749 [59 Cal.Rptr. 156, 427 P.2d 820].)

In any event, the question before this court is not whether appellant acted wrongly, or whether he could have been prosecuted under some other statute, but whether his conduct violated the statute under which

---

[4]Appellant's position is supported by correspondence which is a part of the Governor's file on the bill, including a letter from the Assistant District Attorney of Alameda County to the Governor's legislative secretary, explaining that the bill was sponsored by the District Attorneys' and Peace Officers' Associations. The letter states in part: "This bill defines a new crime by making it unlawful to discharge a firearm at an inhabited dwelling house or occupied building.... [¶] The need for the bill arises from the increasing frequency of shootings *into* homes by reckless, irresponsible and malicious persons. Prosecution has always presented a problem where dwellings temporarily unoccupied or where the defense made a point about lack of intent to assault anyone by such conduct." (Italics added.) We recognize that this letter does not represent the intent of the Legislature, as it is neither a statement of a legislator nor a report to the Legislature from the bill's proponents. (Cf. *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 700 [170 Cal.Rptr. 817, 621 P.2d 856].) It does, however, evidence what law enforcement groups wanted when they proposed the statute, which is something different than the People are urging here.

the prosecutor elected to prosecute. (*People* v. *Moreland* (1978) 81 Cal.App.3d 11, 15 [146 Cal.Rptr. 118].)

We conclude that the firing of a pistol within a dwelling house does not constitute a violation of Penal Code section 246. The most that can be said for appellant's conduct was that he intentionally discharged a pistol within a dwelling.[5] Because that conduct was not proscribed by the statute under which he was prosecuted, his conviction must be reversed. We carefully note, however, that a different question would be presented if a person fired a weapon from one apartment into an adjoining apartment, either through the common wall, or through the floor or ceiling. A different question would also be presented if an individual discharged a firearm in a hallway of a multiple family dwelling. We make these references to emphasize that our decision here is limited to the discharge of a firearm within a dwelling.

Judgment is reversed.

Feinberg, J., and Barry-Deal, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 23, 1981. Newman, J., was of the opinion that the petition should be granted.

---

[5]Furthermore, it appears from the facts of the instant case that the firearm was discharged not indiscriminately within the dwelling house, but intentionally and directly at a television set. We find nothing within Penal Code section 246 that remotely suggests that the Legislature intended that the shooting of a television set, whether done by a trespasser or the owner of the set, should be a felony. We shudder to think of a scenario wherein a parent, having his fill of "Mork and Mindy," turns the television off, much to the distress of his children. He is then subjected to the invariable harangue, which abruptly terminates when he dispatches the television with a round from his "tiny little pistol," only to find himself doing two years in state prison upon complaint by his children. If the shooting of a television set is to become a felony punishable by imprisonment, let the Legislature, not the courts, so decree.