Filed 12/16/20  P. v. Eckhardt CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE, | C089916 |
| Plaintiff and Respondent, | (Super. Ct. No. P17CRF0174) |
| v. | |
| CHARLES LEE ECKHARDT, | |
| Defendant and Appellant. | |

Defendant Charles Lee Eckhardt was convicted of six counts of lewd acts on a child and two counts of oral copulation of a child.  On appeal, defendant contends: (1) the trial court prejudicially erred by admitting evidence of a prior conviction, and (2) defendant received ineffective assistance of counsel because defense counsel failed to object when the trial court sentenced defendant to consecutive sentences.  We will affirm the judgment, but direct correction of a clerical error in the abstract of judgment.

1

FACTUAL AND PROCEDURAL BACKGROUND

*Defendant's Prior Conviction*

When defendant was 17 years old, he began dating the victim's mother (the mother); the mother was then 13 years old. The mother and defendant had sex after defendant turned 18, and the mother became pregnant with the victim when the mother was 14 years old. Based on this relationship with the mother, defendant was convicted for having unlawful sexual intercourse with a minor. (Pen. Code, § 261.5, subd. (c).)[1] The two continued their relationship and eventually were married.

*People's Case*

At the time of the crimes at issue in this case, defendant and the mother lived together with the victim, the victim's sister, and the victim's half-brother. Defendant worked seasonally as a roofer and the mother worked during the day.

When the victim was approximately 10 years old, defendant sexually abused her over a six- or seven-month period while the mother was at work. Defendant was approximately 30 years old at this time. In one incident, the victim was taking a shower when defendant came into the shower with her. He touched her genitals with his mouth and hands. This happened on four or five separate occasions. In one instance, the victim was taking a bath with defendant when he pushed her mouth down onto his penis. He also tried to put his penis into her vagina. In another instance, defendant placed the victim's hand on his erect penis while in the shower. He did the same in a different incident in his bed.

In a separate incident, the victim was sleeping on the couch and woke up to defendant rubbing his groin against her back. He removed the victim's pants and tried to put his penis in her vagina.

---

[1] Undesignated statutory references are to the Penal Code.

2

In another incident, the victim was in the basement. Defendant pushed her against a wall and rubbed his hands all over her body before removing her pants and trying to have sex with her. Defendant stopped when he heard the mother arriving home from work.

At some point, the mother walked in on defendant washing the victim's hair in the shower. She noticed defendant had an erection and confronted him. The mother told defendant he could not get in the shower with the victim anymore. The next day, however, she arrived home and again found him in the shower with the victim. She told the victim to get out of the shower and asked her if defendant had touched her. The victim said no, because defendant had told her not to tell anyone about his conduct. Shortly thereafter, the mother moved out of the house with the victim because of the shower incidents and because of other relationship problems with defendant. Defendant and the mother shared parenting time with the children.

Some time later, the victim's grades began to suffer. When the mother asked her about the grades, the victim admitted defendant had "touched" or "hurt" her, but did not want to elaborate. The victim did not want to make defendant angry by telling her mother everything.

When the victim was a senior in high school, she had moved in with her boyfriend and her boyfriend's mother. The victim confided to her boyfriend about the sexual abuse. She then told her boyfriend's mother, and later reported the abuse to law enforcement, although she omitted some details in her initial conversations with them.

During the ensuing investigation, the victim participated in a pretextual call to defendant, a recording of which was played for the jury and admitted into evidence. Defendant did not admit sexually abusing the victim during the call, but acknowledged he had "done some fucked up things."

The prosecution introduced expert testimony from Dr. Anthony Urquiza, a professor and psychologist. Dr. Urquiza testified about reasons a child sexual abuse

victim might not immediately report their abuse. In particular, he cited threats and intimidation, as well as the understanding by victims that "you're involved in an ongoing relationship with somebody who has power and control over your life." Thus, child sexual abuse victims frequently delay disclosure of their abuse.

*Defense Case*

The victim's sister and half-brother testified for defendant. Both stated their grades had suffered around the time the victim's mother moved out. The victim's sister denied defendant had ever touched her inappropriately.

Defendant testified on his own behalf and denied he had ever touched the victim inappropriately. He denied he had ever showered with the victim or had an erection around her. He also denied the mother had ever confronted him about having an erection in the shower with the victim.

Defendant admitted having sex with the mother when she was 14 years old and admitted he had been convicted of unlawful sexual intercourse with a minor because of this relationship. He explained he and the mother lived together, with the mother's mother, and he supported the mother financially, just as he would later support the victim. He stated he and the mother had separated because she was having an affair, and not because of anything that had occurred with the victim.

After the separation, defendant and the mother shared parenting time until the victim left when she was 15 or 16 years old. In the months before the victim left, defendant and the victim had a difficult relationship, which defendant attributed to the victim's lying, physical abuse of her siblings, and theft.

With respect to the pretext call, he acknowledged several long pauses on his part when responding to accusations of child molestation, but explained he had simply been in disbelief. He also suspected the mother was behind the call because he had recently threatened to seek full custody of the victim's sister.

4

The defense called Dr. Eugene Roeder, a forensic psychologist. Roeder had conducted an evaluation pursuant to *People v. Stoll* (1989) 49 Cal.3d 1136 on defendant, which is intended to detect sexual deviancy. The test assessed specific factors-- defendant's honesty, psychiatric disorders, narcissism, antisocial personality, drug abuse, alcohol abuse, sadism, and masochism. Roeder determined defendant had some paranoia, but opined this was normal for a defendant in a criminal prosecution. Defendant did not display evidence of the other factors, and there was no evidence of sexual deviancy or abnormality.

*Verdict and Sentencing*

In closing arguments, the prosecution referred to defendant's prior conviction for unlawful sexual intercourse with a minor as evidence of defendant's propensity to be sexually attracted to young girls. The trial court instructed the jury with CALCRIM No. 1191, which admonished the jury that defendant's prior conviction was "only one factor to consider along with other evidence." Count 1 had been dismissed before argument; the jury found defendant guilty on six counts of lewd acts on a child (§ 288, subd. (a); counts 2 through 7) and two counts of oral copulation of a child (former § 288a, subd. (C)(1); counts 8 and 9).

At the sentencing hearing, the trial court elected to sentence defendant to the upper term on count 2, based on its findings that defendant had deceived the victim into thinking his actions were permissible, his actions "were frightening and confusing to [the victim]," and defendant lacked remorse for his actions. The court also determined the terms for the counts should run consecutively, saying: "I've selected the terms in Counts 3, 4, 5, 6, 7, 8, and 9 to run consecutively to Count 2 and consecutive to each other. The reasons for selecting consecutive sentencing is because [*sic*]: [¶] 1. The Defendant was separately convicted in 2001 of a felony violation of Penal Code Section 261.5, engaging in sexual relations with a minor over three years younger than himself; [¶] And [¶] 2. The counts for which the consecutive sentences have been imposed reflect separate

5

offenses committed at different times." Ultimately, the court sentenced defendant to an aggregate term of 22 years in state prison. Defense counsel asked for leniency, including "running one or more of the counts concurrent" but did not object to the imposition of consecutive terms.

DISCUSSION

I

*Prior Sexual Misconduct*

Defendant argues the trial court erred when it introduced evidence of defendant's conviction for unlawful sexual intercourse with a minor based on his sexual relationship with the mother when she was 13 years old. He argues the prior conviction was dissimilar from the offenses at issue in this case, was remote in time, and introduced the possibility the jury would punish him for his prior conduct, rather than the current offenses. The erroneous admission of the evidence, defendant claims, constituted a violation of due process. We disagree.

Generally, evidence of prior misconduct is not admissible to prove propensity to commit the charged conduct. (Evid. Code, § 1101, subd. (a).) However, evidence that a person committed other acts can be admissible when relevant to prove some fact--i.e., motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident--other than his or her disposition to commit such an act. (*Id.*, § 1101, subd. (b).) And, as relevant here, "[i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." (*Id.*, § 1108, subd. (a).)

Thus, if evidence is admissible under Evidence Code section 1108, the trial court must "exclude [it] if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid.

6

Code, § 352.) In conducting this weighing process, the trial court considers the " 'unique facts and issues of each case.' " (*People v. Nguyen* (2010) 184 Cal.App.4th 1096, 1116.) " 'Rather than admit or exclude every sex offense a defendant commits, trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses . . . .' " (*Id*. at pp. 1116-1117.)

We review a trial court's decision to admit evidence of a prior sexual offense under Evidence Code sections 352 and 1108 for an abuse of discretion. (*People v. Avila* (2014) 59 Cal.4th 496, 515.) A discretionary decision will not be disturbed on appeal, absent " 'a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125.)

Here, defendant had a 2001 conviction for unlawful sexual intercourse with a minor based on a sexual relationship with the mother, who was then 13 years old. The prosecution moved in limine to admit evidence of this prior conviction and defendant opposed the motion, arguing the conviction was remote in time and lacked similarity to the charged crimes.

The crime of unlawful sexual intercourse with a minor (§ 261.5, subd. (c)), is enumerated in Evidence Code section 1108 and is therefore potentially admissible as propensity evidence. (Evid. Code, § 1108, subd. (d)(1)(A).) The charged offenses include lewd acts on a minor (§ 288), which has a specific intent requirement: it punishes acts done "with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child." (§ 288, subd. (a).) Unlawful sexual

7

intercourse with a minor tends to prove sexual desire towards children, making the prior conviction highly relevant as evidence of the required specific intent.

Moreover, the prior conviction was not excessively inflammatory or prejudicial when compared to the charged offenses at issue. The prior conviction did not involve any violence and, as defendant notes, resulted in a lengthy (and legal) relationship. The age disparity between defendant and the mother was narrower than that between defendant and the victim. The relative punishments between the relevant crimes also support the conclusion that defendant's prior conviction was not more egregious than the charged crimes. Unlawful sexual intercourse with a minor is a wobbler and is punishable by 16 months to three years as a felony or up to one year as a misdemeanor. (§§ 261.5, subd. (c), 1170, subd. (h).) The charged offense, however, is a felony and is punishable by three, six, or eight years in state prison. (§ 288, subd. (a).)

Similarly, there was a high degree of certainty the prior misconduct occurred because it resulted in a criminal conviction, which defendant admitted. There is no indication the admission of the prior conviction took up an excessive amount of time at trial, nor was it an unduly complex crime such that it ran the risk of confusing or misleading the jury. And because defendant was convicted of the crime, there was a reduced risk the jury would attempt to punish defendant for the prior misconduct. (*People v. Falsetta* (1999) 21 Cal.4th 903, 917.)

Defendant contends the facts behind the prior conviction were too dissimilar to the charged crimes to be admissible. " ' "[T]he charged and uncharged crimes need not be sufficiently similar that evidence of the latter would be admissible under Evidence Code section 1101, otherwise Evidence Code section 1108 would serve no purpose. It is enough the charged and uncharged offenses are sex offenses as defined in section 1108." ' [Citation.]" (*People v. Cordova* (2015) 62 Cal.4th 104, 133.) Moreover, there were significant similarities between the offenses. Though the conduct in the offenses involved a different disparity in ages between defendant and the respective victims, both

8

were premised on defendant's efforts to have sex with young girls. Both involved young girls who were financially or emotionally dependent on defendant; defendant testified that he supported both the victim and the victim's mother in similar ways. Both also involved victims who loved defendant very deeply and were reluctant to report him to law enforcement, demonstrating defendant's propensity for emotional exploitation. These similarities "permitted the inference that defendant had a propensity to commit such sex offenses, including the charged crime. [Citation.]" (*Id.* at p. 134.) " 'This circumstance brings the evidence precisely within the primary purpose behind Evidence Code section 1108.' [Citation.]" (*Ibid.*)

Nor do we find the prior conviction unacceptably remote. (See *People v. Robertson* (2012) 208 Cal.App.4th 965, 992 [listing cases affirming admission of evidence of prior sexual crimes that occurred decades before the current crime]; *People v. Pierce* (2002) 104 Cal.App.4th 893, 900 [where crimes are substantially similar, any prejudicial effect of remoteness may be mitigated]; *People v. Branch* (2001) 91 Cal.App.4th 274, 284 ["No specific time limits have been established for determining when an uncharged offense is so remote as to be inadmissible"].) The approximate 12-year gap between the prior offense and the current offenses in this case does not counterbalance the similarities between the crimes such that the prior conviction should not have been considered.

Although defendant relies in large part on our opinion in *People v. Harris* (1998) 60 Cal.App.4th 727, we find that case very different. As defendant acknowledges, in *Harris* the prior conviction involved a violent and bloody sexual assault in which defendant's role was unclear, while the charged offense involved defendant's non-violent sexual touching of an institutionalized victim. (*Id.* at p. 738.) The disparity of the offenses and the use of the violent assault to prove the less aggressive crime resulted in prejudice for multiple reasons. (*Id.* at pp. 738-741.) In contrast, here, as we have described, consideration of the relevant factors when applied to the specific facts of this

9

case show no abuse of discretion in the decision to admit the prior conviction. For similar reasons, defendant's due process rights were not violated. (See *People v. Kraft (*2000) 23 Cal.4th 978, 1035 ["Application of the ordinary rules of evidence generally does not impermissibly infringe on a capital defendant's constitutional rights"].)

## II

### *Ineffective Assistance of Counsel*

Defendant contends the trial court erred when it imposed consecutive sentences with respect to counts 1 and 7. Count 4, which involved defendant attempting to insert his penis into the victim while on the couch, and count 7, which involved defendant dry-humping the victim on the couch, were both part of the same incident. Thus defendant argues that the trial court was mistaken when it determined the counts occurred "at different times" and the sentences should run consecutively. Defendant claims he received ineffective assistance of counsel because defense counsel failed to object to this error. We disagree.

When imposing consecutive rather than concurrent sentences, a trial court must state reasons for doing so. (§ 1170, subd. (c); Cal. Rules of Court, rule 4.406(b)(5); *People v. Neal* (1993) 19 Cal.App.4th 1114, 1117.) But an appellate challenge to a failure to do so is forfeited by failing to object below. (*People v. Morales* (2008) 168 Cal.App.4th 1075, 1084.) Here, the trial court imposed consecutive terms and defendant's counsel did not object. Defendant argues no satisfactory explanation exists for the failure.

We conclude defense counsel did not provide ineffective assistance because it is not reasonably probable defendant would have obtained a more favorable result had defense counsel objected. (*People v. Avena* (1996) 13 Cal.4th 394, 418; *People v. Alvarado* (2001) 87 Cal.App.4th 178, 194.)

When imposing consecutive terms, the trial court may consider whether "(1) [t]he crimes and their objectives were predominantly independent of each other; [¶] (2) [t]he

10

crimes involved separate acts of violence or threats of violence; or [¶] (3) [t]he crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior." (Cal. Rules of Court, rule 4.425(a).) The court may consider other circumstances in aggravation or mitigation except those used to impose the upper term or enhance a sentence or that are elements of the crime. (Cal. Rules of Court, rule 4.425(b).) Such circumstances can include, among others, the vulnerability of the victim, whether the defendant "took advantage of a position of trust . . . to commit the offense," or the number or increasing severity of the defendant's prior convictions. (*Id.*, rule 4.421.)

Here, the trial court imposed consecutive terms because of defendant's prior conviction and the court's determination that the counts each "reflect[ed] separate offenses committed at different times." However, the court also recited defendant's criminal history, noting that it began with a conviction for unlawful sexual intercourse with a minor and escalated into a felony conviction for spousal abuse before culminating in the case at hand. The court also noted the particular aggravating circumstances in the case, including the fact the victim was "particularly vulnerable" because she was alone when the crimes occurred and "was living in the same house as the Defendant," and defendant "took advantage of a position of trust and confidence."

The trial court imposed the upper term on count two, relying on defendant's taking advantage of a position of trust to deceive the victim, the fact defendant's actions were frightening to the victim, and defendant's lack of remorse for his actions. Thus, the remaining aggravating circumstances--defendant's prior convictions of increasing severity and the victim's vulnerability--were available to support consecutive sentencing, even absent the court's disputed finding the crimes were separate offenses committed at different times. Thus, an objection by defense counsel arguing the crimes were not committed at different times would not have led to a better result for defendant because the trial court had ample alternative reasons to impose consecutive sentences.

11

Defendant's contention that defense counsel provided ineffective assistance of counsel by failing to object to the trial court's imposition of consecutive sentences fails to persuade.

## III

### *Abstract of Judgment*

Although the parties did not raise it in their briefing, we have identified a clerical error in the abstract of judgment. In its oral pronouncement, the trial court determined defendant was entitled to 783 days of actual credit for time served, but the abstract of judgment incorrectly indicates 738 days of actual credit for time served. Because this appears to be a simple clerical error, we will direct the trial court to correct the abstract of judgment without further briefing in the interest of judicial economy. (*People v. Rowland* (1988) 206 Cal.App.3d 119, 123.)

## DISPOSITION

The judgment is affirmed. The trial court is directed to correct the abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.

/s/
Duarte, Acting P. J.

We concur:

/s/
Hoch, J.

/s/
Renner, J.

12