Filed 7/2/24  P. v. Vital CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | C098081 |
| Plaintiff and Respondent, | (Super. Ct. No. 62178854) |
| v. | |
| RAFAEL VITAL, | |
| Defendant and Appellant. | |

After a jury found defendant Rafael Vital guilty of attempted murder, evasion of a peace officer, and assault, the trial court sentenced defendant to life with the possibility of parole plus 23 years.  On appeal, defendant contends that:  (1) his counsel was ineffective for failing to oppose the admission of his custodial statement; (2) the trial court erred in not staying his sentence and for imposing a consecutive term for the evasion conviction; and (3) his counsel was ineffective for failing to object to these alleged sentencing errors. Finding no merit to these contentions, we affirm.

1

## I. BACKGROUND

While on patrol in Roseville, a police officer noticed a red pickup truck stopped in a hotel's driveway. A records check revealed the truck's registered owner, defendant, was on active probation. After passing the officer, defendant drove into another parking lot; the officer followed in his patrol car. Defendant then turned around, drove directly toward the officer's car, and fled at high speed. The officer activated his emergency siren and pursued defendant onto the freeway. Defendant drove onto the shoulder and stopped. The officer got out of his car, drew his firearm, and yelled, "police" and "show me your hands." Defendant leaned out of the driver's seat window with his hands extended and the officer saw a muzzle flash and heard a gunshot. The officer took cover. As he stood up to return fire, the officer saw another muzzle flash and heard a second gunshot. The officer took cover again.

Defendant drove off and the officer continued the pursuit. After exiting the freeway, defendant crashed his truck, jumped on its hood, scaled a chain-link fence, and fled. Police apprehended defendant several hours later.

Investigator David Woodruff advised defendant of his right to remain silent and his right to have an attorney present pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436. Defendant affirmed that he understood these rights. Defendant said he had fled in fear of his life and in self-defense after a police officer pulled a gun on him for no reason. Defendant claimed he did not own a gun, had never fired a gun at the police officer, and did not stop on the freeway during the pursuit.

Investigator Woodruff asked defendant when he had last "got[ten] high," to which defendant responded that had "nothing to do with me." Having found a pipe in defendant's truck, Investigator Woodruff specifically asked when defendant had last smoked methamphetamine; defendant said he did not know but admitted to smoking a lot generally. When asked if he had smoked the prior night, defendant said he did not know.

When Investigator Woodruff turned the conversation back to the incident by asking "what happened yesterday," defendant responded "I told you what I told you and that's it. That's all I'm gonna say." A different investigator then began asking questions of defendant. Defendant responded to several questions but then said "No more questions, no more questions . . . I already answered them." Later, after Investigator Woodruff resumed questioning, defendant again said "no more questions." The investigators told defendant they did not believe him and continued to push back on his version of events. Defendant responded, "I'm just not gonna talk to someone that just doesn't believe me. You heard that story."

The People charged defendant with attempted murder (Pen. Code,[1] §§ 664, 187, subd. (a)), evading a peace officer with willful disregard (Veh. Code, § 2800.2, subd. (a)), and assault with a semiautomatic firearm (§ 245, subd. (b)). As to the attempted murder, it was alleged that: (1) the offense was willful, deliberate, and premeditated; (2) the offense was committed against a peace officer and defendant knew or reasonably should have known the victim was a peace officer (§ 664, subd. (e)); and (3) defendant personally and intentionally discharged a firearm (§ 12022.53, subd. (c)). As to the assault, the People alleged defendant personally used a firearm (§ 12022.5, subd. (d)). The People also alleged six aggravating circumstances.

At trial, the officer involved in the incident testified he was more afraid to die on that freeway than he had ever been when deployed in Afghanistan. After the incident, the officer could not stop himself from shaking.

Defendant testified in his defense. He admitted that on the night of the incident he was on probation with outstanding warrants and tried to get away after seeing law enforcement. He further admitted he shot his gun twice after pulling over on the freeway.

---

[1] Undesignated statutory references are to the Penal Code.

But he insisted he had shot "toward the ground" and never intended to kill anyone. Rather, defendant claimed he was just trying to get away and wanted to scare the officer off. Defendant said he was not high that night and the last time he had used was a couple of days prior. In rebuttal, the People introduced a video recording of defendant's custodial interrogation in which he said (contrary to his trial testimony) that on the night of the offense he ran because the officer pulled a gun on him, that he did not own a gun, and that he had not shot at the officer on the freeway.

The jury found defendant guilty of attempted murder, evading a peace officer with willful disregard, and assault with a semiautomatic firearm. The jury found true the firearm and peace officer allegations as well as three aggravating circumstances. The jury found not true that the attempted murder was willful, deliberate, and premeditated. In a subsequent proceeding, the trial court found true two additional aggravating circumstances.

At the sentencing hearing, the trial court stated it had read and considered the probation officer's report and the People's sentencing brief. The probation report recommended consecutive sentencing for the attempted murder and the evasion conviction because "the crimes and their objectives were independent of one another." In their sentencing brief, the People stated, as to the evasion conviction, that "the Court has the discretion to sentence the defendant to a full and consecutive term for that offense or a concurrent term." The People repeated this point during argument, noting that "the Court still has discretion . . . to either impose it consecutively or concurrently." Defense counsel argued several points but "most importantly" asked the court to exercise its discretion to strike the 20-year firearm enhancement. The trial court ultimately declined to do so and sentenced defendant to: (1) life with the possibility of parole for the attempted murder; (2) 20 years for the firearm enhancement associated with the attempted murder; and (3) a consecutive term of three years (the upper term) for evading a peace officer. The trial court also sentenced defendant to the upper term of nine years

4

for the assault plus the upper term of 10 years for the associated firearm enhancement but stayed both sentences under section 654.

Defendant timely appealed.

## II.  DISCUSSION

*Admissibility of Defendant's Custodial Statement*

Defendant contends his trial counsel was ineffective for failing to move to exclude defendant's custodial statement because it was involuntary and violated *Miranda*.

To establish a claim for ineffective assistance of counsel, defendant must show his counsel's performance was deficient and that he suffered prejudice as a result.  (*People v. Mickel* (2016) 2 Cal.5th 181, 198; *Strickland v. Washington* (1984) 466 U.S. 668, 687-692.)  If either element of the ineffective assistance of counsel analysis has not been proven, the defendant's claim of ineffective assistance fails.  (*Strickland*, at p. 697.)  We presume that "counsel's actions fall within the broad range of reasonableness, and [we] afford 'great deference to counsel's tactical decisions.' "  (*Mickel*, at p. 198.)  " 'Counsel may not be deemed incompetent for failure to make meritless objections.' "  (*People v. Lucero* (2000) 23 Cal.4th 692, 732.)

Defendant claims the investigators violated his *Miranda* rights because he did not expressly waive those rights at the start of the interview and subsequently invoked his right to remain silent several times.  But even assuming a *Miranda* violation, defendant's statement could still be used for impeachment purposes.  "*Miranda* was not intended to grant the suspect license to lie in his or her testimony at trial, and thus if an ensuing statement obtained in violation of *Miranda* is voluntary, the statement nonetheless may be admitted to impeach a defendant who testifies differently at trial."  (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 55; see also *People v. Nguyen* (2015) 61 Cal.4th 1015, 1075; *People v. Peevy* (1998) 17 Cal.4th 1184, 1188; *Harris v. New York* (1971) 401 U.S. 222, 225-226 ["The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent

5

utterances"].)  That is precisely how the People used the evidence here.  Defendant's statement to Investigator Woodruff was introduced only in rebuttal after defendant testified in contradiction to that prior statement.

Defendant argues it was improper to use his statement for impeachment because it was involuntary.  We disagree.  "The test for the voluntariness of a custodial statement is whether the statement is ' "the product of an essentially free and unconstrained choice" ' or whether the defendant's ' "will has been overborne and his capacity for self-determination critically impaired" ' by coercion."  (*People v. Cunningham* (2015) 61 Cal.4th 609, 642.)  Coercive police activity is a necessary predicate to finding a statement involuntary.  (*Id*. at p. 643.)  "A statement is involuntary [citation] when, among other circumstances, it 'was " 'extracted by any sort of threats . . . , [or] obtained by any direct or implied promises.' " ' "  (*People v. Neal* (2003) 31 Cal.4th 63, 79.)  "Voluntariness does not turn on any one fact, no matter how apparently significant, but rather on the 'totality of the circumstances.' "  (*Ibid*.)

We have reviewed the video of defendant's interrogation and conclude that the investigators were not overbearing or coercive.  Their questioning was not abusive, and defendant never appeared browbeaten or intimidated.  The record thus belies defendant's claim that his statement was involuntary.

Urging the contrary conclusion, defendant points out that he never expressly waived his *Miranda* rights.  But a *Miranda* waiver need not be express.  (See *North Carolina v. Butler* (1979) 441 U.S. 369, 375-376.)  Where, as here, a *Miranda* warning was given and understood, and the accused actively participated in the interview and was responsive, an implied waiver is established.  (See *Berghuis v. Thompkins* (2010) 560 U.S. 370, 384.)  Defendant also argues that investigators did not sufficiently determine whether he was impaired given the methamphetamine pipe found in his car.  We note that an interviewee may still give a voluntary statement even when under the influence of drugs.  (See *People v. Perdomo* (2007) 147 Cal.App.4th 605, 617; *People v.*

6

*Hensley* (2014) 59 Cal.4th 788, 814 ["In the absence of evidence of coercion, 'we cannot conclude that defendant's statement was involuntary solely because of any alleged physical or mental condition' "].) But more importantly, there is no evidence defendant's faculties were impaired during the interrogation. Defendant was aware throughout the interview and his answers were coherent and responsive. And at trial, defendant testified that he had not been high at the time of the offense.

Finally, defendant claims that the custodial statement was involuntary because investigators ignored his efforts to invoke his right to silence. We question whether, when understood in context, the claimed invocations actually amounted to an invocation of the right to remain silent. (See *People v. Sanchez* (2019) 7 Cal.5th 14, 49 ["[W]hen, as in this case, a defendant has waived his *Miranda* rights and agreed to talk with police, any subsequent invocation of the right to counsel or the right to remain silent must be unequivocal and unambiguous"].) But even assuming that they did, we still conclude, under the totality of the circumstances, that defendant's custodial statement was voluntary. (See *People v. Nguyen*, *supra*, 61 Cal.4th at p. 1078 [concluding that statement taken in violation of *Miranda* was voluntary]; *People v. Jablonski* (2006) 37 Cal.4th 774, 814 [rejecting argument that "*Miranda* violations themselves, if repeated and persistent, are sufficient to establish involuntariness" because such violations do not " 'inherently constitute coercion' "].)

Because defendant's statement was voluntary, it could be used to impeach defendant's testimony at trial even if his *Miranda* rights were violated. Any challenge by trial counsel that the statement was involuntary or obtained in violation of *Miranda* would have been futile. Accordingly, we reject defendant's claim of ineffective assistance of counsel. (See *People v. Lucero* (2000) 23 Cal.4th 692, 732 [" 'Counsel may not be deemed incompetent for failure to make meritless objections' "].)

7

*Staying Sentence for Evasion of a Peace Officer*

Defendant next argues the trial court erred in failing to stay the sentence under section 654 for the evasion offense. He also contends his trial counsel was ineffective for failing to argue that the sentence should be stayed.

Section 654, subdivision (a) provides that "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." " 'The proscription against double punishment in section 654 is applicable where there is a course of conduct which . . . comprises an indivisible transaction punishable under more than one statute . . . . The divisibility of a course of conduct depends upon the intent and objective of the actor, and if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one.' " (*People v. Coleman* (1989) 48 Cal.3d 112, 162; see also *People v. Corpening* (2016) 2 Cal.5th 307, 311 [explaining that where the case involves a single course of conduct, the reviewing court must "consider whether that course of conduct reflects a single ' "intent and objective" ' or multiple intents and objectives"].) To permit multiple punishments, " 'there must be evidence to support a finding the defendant formed a separate intent and objective for each offense for which he was sentenced.' " (*Coleman*, at p. 162.) Where the trial court does not stay a sentence pursuant to section 654 and offers no factual basis for its decision, we presume the court found that the defendant harbored a separate intent and objective for each offense. (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1147.) We review the record for substantial evidence to support the trial court's implied determination. (*People v. Jimenez* (2019) 32 Cal.App.5th 409, 425; *People v. Racy* (2007) 148 Cal.App.4th 1327, 1336-1337.)

Defendant submits he had only a single objective in committing the attempted murder and the evasion offense—to escape. But substantial evidence supports the conclusion that defendant entertained multiple criminal objectives. Rather than continue

8

to flee, defendant elected to pull over on the freeway and open fire on the pursuing officer. These were distinct acts, and the trial court could have reasonably determined they were committed with separate objectives. Further, the trial court could have concluded that defendant had time to reflect before shooting at the officer. (See *People v. Jimenez, supra*, 32 Cal.App.5th at p. 426 [holding that § 654 did not bar multiple punishments for evading a peace officer and assault because the defendant's "initial efforts trying to evade . . . and his subsequent assaultive conduct, 'were volitional and calculated, and were separated by periods of time during which reflection was possible' "].) As one court explained, "[i]t is one thing to commit a criminal act in order to accomplish another; . . . section 654 applies there. But that section cannot, and should not, be stretched to cover gratuitous violence or other criminal acts far beyond those reasonably necessary to accomplish the original offense." (*People v. Nguyen* (1988) 204 Cal.App.3d 181, 191.) "[A]t some point the means to achieve an objective may become so extreme they can no longer be termed 'incidental' and must be considered to express a different and a more sinister goal than mere successful commission of the original crime." (*Ibid*.) Such is the case here. Consequently, we find no merit in defendant's section 654 claim.

Defendant relatedly argues—in passing and without citation to authority—that the decision not to stay his evasion sentence "may have also violated his constitutional right to due process of law and a fair trial." We consider only those arguments sufficiently developed to be cognizable. (*People v. Freeman* (1994) 8 Cal.4th 450, 482, fn. 2.) "To the extent defendant perfunctorily asserts other claims, without development . . . they are not properly made" and may be "rejected on that basis." (*Ibid*.) We reject defendant's underdeveloped contention for this reason.

Finally, having concluded that the trial court did not err, we find no ineffective assistance of counsel for not arguing that the sentence for evasion should be stayed. (See

*People v. Pierce* (2015) 234 Cal.App.4th 1334, 1337 ["Since the claim fails on its merits, defense counsel did not render ineffective assistance"].)

*Consecutive Sentences*

Defendant claims the trial court erred in imposing a three-year term for evading a peace officer consecutively to his other sentences. According to defendant, the trial court was required to state its reasons for choosing a consecutive term instead of a concurrent term. This claim has been forfeited by defendant's failure to raise the argument below. (See *People v. Morales* (2008) 168 Cal.App.4th 1075, 1084; *People v. Scott* (1994) 9 Cal.4th 331, 356 ["[C]omplaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal"].)

Anticipating this conclusion, defendant argues his trial counsel was ineffective for failing to raise the issue, claiming there "simply can be no satisfactory explanation" for not doing so. We disagree. At sentencing, defense counsel focused on his request to have the 20-year firearm enhancement stricken. He was not required to jeopardize his argument about the firearm enhancement and risk alienating the court by also arguing that the three-year term for the evasion conviction should be imposed concurrently. This is especially true given that the People had already informed the trial court it had discretion to impose either a consecutive or a concurrent term. Defense counsel thus could have made a reasonable tactical decision to not shift the focus away from his primary goal of having the firearm enhancement stricken.

We further conclude that, even had defense counsel raised this issue, it is not reasonably probable defendant would have obtained a better result. Absent evidence to the contrary, we presume the trial court knew and followed the law. (*People v. Ramirez* (2021) 10 Cal.5th 983, 1042.) The court indicated it had read and considered the probation report, which explained why a consecutive term was appropriate, and the People told the court it had discretion to impose either a consecutive or a concurrent term.

10

The court was thus well aware of its discretion, and it is not reasonably probable the court would have imposed a concurrent term had defense counsel raised the point.

### III.  DISPOSITION

The judgment is affirmed.


_/s/_____
Wiseman, J.*


We concur:


_/s/_____
Hull, Acting P. J.


_/s/_____
Mauro, J.

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11